R. Stafford, et al., v. T. J. Campbell, et al.

**Replevin Bond—Release of Surety.**

Where there is no execution on a replevin bond for more than fourteen months the surety will be released.

**Waiver.**

Where it is sought to hold a surety where execution has not issued for more than a year on a replevin bond, because the surety consented and procured indulgence from the plaintiff, the evidence must clearly show the consent by the surety.

**Judicial Sales of Real Estate.**

An execution under which a levy and sale of real estate is made is void for uncertainty where the sheriff's return on the execution shows that he "levied on 1,500 acres of land given up by John Stafford." Land so described cannot be identified and a levy and sale thereunder is void.

APPEAL FROM JOHNSON CIRCUIT COURT.

November 12, 1875.

Opinion by Judge Lindsay:

The answer of appellees is, in effect, a cross-petition, in which

they set up the fact that John Stafford was, at the time of the institution of the action, the holder of the legal title, and in the actual possession of the land in controversy; and they seek, by way of relief, to have his title and possession quieted. They pray that the cause be transferred to the equity side of the docket. The reply to the cross-petition distinctly recognizes the change in the character of the proceeding wrought by the filing of appellant's pleading; and from that time forward, the parties all treated the action as a suit in equity, as it was proper they should do.

Appellees claim under an execution sale; their claim necessarily concedes that John Stafford held the legal title to the land. The proof shows that there were parties upon and in possession of the land, claiming to hold under Stafford. This fact, however, need not have been proved, as it is set up in the petition, and relied on by appellees as a ground for relief.

If the levy and sale under the execution were void, then appellees should have failed in their action, and appellants should have had relief upon their cross-petition.

It is conceded that John Stafford was a surety on a replevin bond. The record shows that at one time there was no execution on said bond for more than fourteen and one-half months. By operation of law, this delay relieved Stafford from the obligation of the bond. Appellees attempt to show that this delay, in the prosecution of their claim, was had at the instance and request, and upon written agreement to Stafford to remain bound.

The only evidence tending to support this hypothesis is the statement of James M. Rice, to the effect that James Franklin, a principal in the replevin bond, "procured witness to visit Prestonsburg for the purpose of procuring indulgence on the replevin bond, which indulgence was given, but only upon conditions of the written consent of the securities, which consent was given in the latter part of spring or early summer of 1839, and was filed with the fi. fa. which the sheriff then had in his hands and returned to the clerk's office of the Floyd circuit court.

It is to be inferred from what the witness says, that the consent was in writing; such being the case, the writing should have been produced. If it is lost, and we may presume it is, then appellees should have proved its contents. This they do not attempt to do. Rice does not pretend to tell what the conditions of the writing were. He does not intimate the extent of the indulgence desired by Franklin, nor the length of time the plaintiff in the judgment agreed

to indulge, nor the character of indulgence the securities agreed in the writing should be extended.   As the statute gives to sureties in replevin bonds an absolute discharge from all liability upon such bonds where the creditor fails for a year to sue out execution with a view to the collection of his debt, the consent upon their part to delay, should not be construed to deprive them of the right to avail themselves of this statutory right, unless it appears expressly, or by implication, that they agreed to waive it, or assented to a suspension of proceedings for more than a year. *McCauley v. Offutt*, 12 B. Mon. 386.

This doctrine is recognized in the subsequent cases of *Furber v. Basset*, 2 Duv. 433, and *Prather v. Harlan & Thompson's Admr.*, 6 Bush 185. Those cases were taken out of the operation by the contemporaneous facts attending them, but the doctrine itself was not sustained. The court below should have held that the execution under which the levy and sale were made was void.

In addition, the levy and the sheriff's return are void for uncertainty. The sheriff indorsed on the execution that he "levied on 1,500 acres of land given up by John Stafford, to be sold at the court house door in Prestonsburg, on the 13th day instant, it being county court day, December 2, 1841."

November 21, 1842, another sheriff, the successor to the sheriff who made the levy, returns on a writ of venditioni exponas. "The land taken on former fi. fa. was offered for sale at the court house door in Prestonsburg, and sold for $25 * * * and James M. Rice, plaintiff's attorney, being the highest bidder, became the purchaser."

If these two returns be made the foundation, it is evident that the land seized and sold cannot be identified by oral proof, unless the witnesses are allowed to speak from personal knowledge or information wholly disconnected from and independent of any fact set out by the sheriffs.

In order to support execution sales, and to protect purchasers at such sales, the returns of officers have always received the most liberal construction. But in no case has a return been held good, unless it stated some fact, with the aid of which the court might, upon proof of extraneous facts, locate the land, and determine, with reasonable certainty that it was the identical land sold.

In this case the officers do not refer to the patent under which the land was originally claimed, nor as to what lands the tract levied on and sold adjoins, nor the person or persons, if any, who

then lived on the land, nor the watercourse or watercourses upon which it lies, nor the county or even the state in which it is situated.

When in 1852 (ten years after the sale) the deputy sheriff executed the conveyance, it is evident he must have relied on his personal recollection of the transaction. He certainly received no information from the returns on the execution. If he and all others having personal knowledge of the levy and sale had been dead in 1852, it is manifest that appellants could not then have obtained title, either from the sheriff then in office, nor from a court acting upon legal and competent testimony.

To uphold the sale and conveyance in this case, would be practically to determine that written returns by sheriffs in sales of land under execution are not important, but that the whole matter may be left to repose in the recollection of persons connected with or cognizant of the facts attending each sale.

We need not notice the remaining questions raised by the appellants. For the reasons indicated, the court should have dismissed appellees' petition, and adjudged that they had no claim to the land, and have quieted the title and possession of appellants so far as said claim of appellees is concerned.

The judgment is *reversed* and the cause remanded for a judgment conformable to this opinion.

*J. R. Botts, for appellants. Apperson & Reid, for appellees.*